

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-11-00058-CV

**GRAY WIRELINE SERVICE, INC.,**

                                                   **Appellant**

 v.

**LARRY R. CAVANNA, DAVID GRAY,
STEVE D. GRAY, KENNETH M. NESTER,
SR., ISMAEL ALVAREZ, EXTREME
WIRELINE TRUCKS & EQUIPMENT, LLC,
ANDREW E. HUGHES, BRUCE R. BARNETT,
AND CGN LEASING, LLC,**

                                                   **Appellees**

_____

**From the 335th District Court
Burleson County, Texas
Trial Court No. 26,239**

_____

# OPINION

_____

This is an interlocutory appeal from three orders that (1) reformed several employment agreements, (2) compelled arbitration in part and denied a stay of the balance of the litigation involving third parties during the pendency of the arbitration, and (3) granted a temporary injunction. *See* TEX. CIV. PRAC. & REMEDIES CODE ANN. § 51.016 (West 2008). Gray Wireline Service, Inc. complains that the trial court erred by

reforming the employment agreements rather than sending those issues to be determined by the arbitrator in contravention of the employment agreement and by refusing to stay the pending litigation in the trial court. GWSI further complains that the trial court erred by granting a temporary injunction in favor of Steve Gray and CGN Leasing. Because we find that the trial court erred by reforming the employment agreements but should have sent that issue to arbitration, and erred by denying the motion to stay the litigation, we reverse the judgments of the trial court and remand to that court for further proceedings. Additionally, because we find that the temporary injunction did not comply with the Rules of Civil Procedure, we reverse the order granting the temporary injunction and order that it be dissolved.

*Background*

Steve Gray formed GWSI, a cased-hole wireline company, which operated primarily in Texas. In 2006, the shareholders of GWSI agreed to sell a portion of their shares to Centre Partners, Inc. and by doing so Centre Partners, Inc. gained control of GWSI. The new owners entered into employment agreements with Larry Cavanna, David Gray, Steve Gray, and Kenneth M. Nester, Sr.[1] which each contained a non-compete clause that terminated at various times depending on the reasons for the individual's departure, but was generally two years in duration. Each of the four

---

[1] David Gray and Steve Gray are both defendants in the trial court proceedings. On appeal, the issue relating to Steve Gray and CGI Leasing, LLC involves only the temporary injunction. The other issues relating to the reformation, the arbitration, and the stay of proceedings involves David Gray but not Steve Gray. Therefore, in this opinion we will refer to Steve Gray by his full name. References to "Gray" refer to David Gray only.

departed from GWSI at various times, with Nester being the last to leave, terminating his employment on August 15, 2009.

GWSI originally filed suit in mid-October of 2009 against Larry Cavanna, David Gray, Steve Gray, Kenneth M. Nester, Sr., Ismael Alvarez, Extreme Wireline Trucks & Equipment, LLC, Andrew E. Hughes, Bruce R. Barnett, and CGN Leasing, LLC seeking a temporary restraining order and asserting various causes of action based on violations of the employment agreement, including tortious interference, breach of fiduciary duty, breach of contract, civil conspiracy, unjust enrichment, unfair competition, violation of Penal Code Chapter 33, conversion, and trespass against the various defendants. The trial court issued a temporary restraining order, which was subsequently extended by agreement of the parties so that they could conduct limited expedited discovery. Shortly after the issuance of the temporary restraining order, Steve Gray and CGN Leasing, LLC filed a demand for arbitration in accordance with Steve Gray's employment agreement, and included a cause of action for a declaratory judgment in the arbitration demand. GWSI ultimately withdrew its request for a temporary injunction the day before the scheduled hearing. Cavanna, David Gray, and Nester then filed a "Motion to Reform and Alternate Motion for Determination" seeking reformation of the non-compete clause pursuant to Section 15.51(c) of the Business and Commerce Code or alternatively a determination that they were in full compliance with the employment agreements. GWSI subsequently filed its own demand for arbitration as to Steve Gray, Cavanna, David Gray, and Nester with the American Arbitration

Association as well as a motion to stay the litigation pending the arbitration with the trial court.

After a hearing on the motions, the trial court denied the motion to compel arbitration relating to the motion to reform and by separate order granted the motion to reform and reformed the employment agreements of Cavanna, David Gray, and Nester. The trial court then granted the motion to compel arbitration but denied the motion to stay the trial court's proceedings pending the arbitration as to all of the defendants except for Cavanna, David Gray, Nester, Steve Gray, and CGN Leasing. The trial court did stay the pending litigation against them until the completion of the arbitration.

*The Non-Compete Agreements*

Each of the employment agreements contained the following language which Cavanna, Gray, and Nester sought to modify in the motion to reform:

> Geographic Limitation. The geographic limitation for the Non-Compete Obligations is any state, province (or substantially equivalent designation of a geographic area within a foreign country), or Outer Continental Shelf region (A) in which the Company provided its products, services, or activities during the twenty-four (24) months prior to the date of termination of Executive's employment with the Company, (B) in which the Company had plans to provide or contemplated providing its products, services, or activities during the twenty-four (24) months prior to the date of termination of Executive's employment, or (C) in which a customer or client of the Company, with whom Executive had or made contact or had access to information and/or files about during Executive's employment with the Company or within the twelve (12) months prior to the date of termination of Executive's employment with the Company, is located.
>
> Acknowledgments. Executive acknowledges and agrees that:
>
> …

(g) the restricted period set forth is a material term of this Agreement and that the Company is entitled to Executive's compliance with these terms during that full period. Therefore, Executive agrees that the restricted period will be tolled during any period of non-compliance by Executive. If the Company must seek injunctive relief or judicial intervention to enforce this Agreement, the restricted time period set forth herein does not commence until Executive is judged by a court of competent jurisdiction to be in full compliance with this Agreement; ….

The trial court reformed the first paragraph to include the language "as evidenced by existing memoranda, minutes, or other correspondence (including, without limitation, internal or external presentations)" in paragraph (B) of the geographic restriction section. The trial court also reformed the tolling paragraph to delete the last sentence and to add the following: "If the Company must seek injunctive relief or judicial intervention to enforce this Agreement, the restricted time period set forth herein does not commence until a court of competent jurisdiction deems it should commence."

*Arbitration*

In evaluating a motion to compel arbitration, a court must first determine whether a valid arbitration agreement exists, and then whether the agreement encompasses the claims raised. *Am. Std. v. Brownsville Indep. Sch. Dist.* (*In re D. Wilson Constr. Co.*), 196 S.W.3d 774, 781 (Tex. 2006); *see In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006) (per curiam); *LDF Constr., Inc. v. Bryan*, 324 S.W.3d 137 (Tex. App.—Waco 2010, no pet.). Whether a valid arbitration agreement exists is a legal question subject to *de novo* review. *Id.* Although the Texas Supreme Court has repeatedly expressed a strong presumption favoring arbitration, the presumption arises only after

the party seeking to compel arbitration proves that a valid arbitration agreement exists. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001).

Arbitration agreements are interpreted under traditional contract principles. *J.M. Davidson*, 128 S.W.3d at 227. If the trial court finds a valid agreement, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration. *Id.* Absent a defense to enforcing the arbitration agreement, the trial court has no discretion but to compel arbitration and stay its own proceedings. *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002) (per curiam).

To determine whether an arbitration agreement covers a party's claims, a court must focus on the complaint's factual allegations, not the legal causes of action asserted. *FirstMerit Bank*, 52 S.W.3d at 754. *See also Energy Transfer Fuel, LP v. Estate of Souter*, No. 10-09-00361-CV, 2010 Tex. App. LEXIS 2975 at *6-7 (Tex. App.—Waco Apr. 21, 2010, no pet.) (mem. op.). We are to construe arbitration clauses broadly, and when a contract contains an arbitration clause, there is a presumption of arbitrability. *See AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986). Any doubts as to arbitrability are to be resolved in favor of coverage. *FirstMerit Bank*, 52 S.W.3d at 754. Likewise, we resolve any doubts about the scope of the arbitration agreement in favor of coverage. *Id.* In fact, the policy in favor of enforcing arbitration agreements is so compelling that a court should not deny arbitration unless it can be said with positive assurance that an arbitration clause is not

susceptible of an interpretation covering the dispute at issue. *Prudential Sec., Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995).

Generally, if the facts alleged "touch matters" that are covered by, have a "significant relationship" to, are "inextricably enmeshed" with, or are "factually intertwined" with the contract that contains the arbitration agreement, the claims are arbitrable. *Pennzoil Co. v. Arnold Oil Co.*, 30 S.W.3d 494, 498 (Tex. App.—San Antonio 2000, orig. proceeding). In other words, to come within the scope of the arbitration provision, a party's allegations need only be factually intertwined with arbitrable claims or otherwise touch upon the subject matter of the agreement containing the arbitration provision. *See Prudential*, 909 S.W.2d at 900; *Jack B. Anglin Co.*, 842 S.W.2d at 271.

### The Arbitration Clause

The arbitration clause at issue in each of the employment agreements states:

Arbitration. Any dispute or controversy between the Company and Executive, arising out of or relating to this Agreement, the breach of this Agreement, or otherwise, shall be settled by arbitration in Wilmington, Delaware administered by the American Arbitration Association in accordance with its Commercial Rules then in effect and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The arbitrator shall have the authority to award any remedy or relief that a court of competent jurisdiction could order or grant, including, without limitation, the issuance of an injunction. However, either party may, without inconsistency with this arbitration provision, apply to any court having jurisdiction over such dispute or controversy and seek interim provisional, injunctive or other equitable relief until the arbitration award is rendered or the controversy is otherwise resolved. Except as necessary in court proceedings to enforce this arbitration provision or an award rendered hereunder, or to obtain interim relief, neither a party nor an arbitrator may disclose the existence, content or results of any arbitration hereunder without the prior written consent of the company and Executive. Each party shall bear its or his own costs and expenses in any arbitration hereunder and one-half of the

arbitrator's fees and costs; provided, however, that the arbitrator shall have the discretion to award the prevailing party reimbursement of its or his reasonable attorney's fees and costs.

No party is contending that the arbitration agreement is not valid or that arbitration should not be ordered. Rather, it is which claims to be determined by the arbitrator that are at issue, specifically, the motion to reform. Therefore, the burden is on Cavanna, Gray, and Nester to establish that the motion to reform the non-compete agreements is not within the scope of the arbitration agreement. *See J.M. Davidson*, 128 S.W.3d at 227.

GWSI complains that the reformation of the non-compete agreements by the trial court was not allowed within the limited categories of relief allowed by the arbitration clause, but that the issue of reformation should be determined by the arbitrator because reformation pursuant to Business and Commerce Code section 15.51(c) is an issue to be determined at a final hearing on the merits. Because of this, GWSI contends that pursuant to the arbitration clause, the trial court could not permanently and finally reform the agreements prior to a determination on the merits at a final hearing, which should have been before the arbitrator.

Cavanna, Gray, and Nester responded by contending both in the trial court and to this Court that the trial court's reformation of the employment agreements was allowed pursuant to the arbitration clause because it constitutes "other equitable relief" as allowed in the arbitration clause. Their position is that the term "interim" does not apply to the entire phrase "interim provisional, injunctive or other equitable relief." We disagree. The arbitration clause clearly contemplates that only temporary relief may be

sought in the trial court. In order for Cavanna, Gray, and Nester's interpretation to be correct, the phrase immediately following "interim provisional, injunctive or other equitable relief" which states "until the arbitration award is rendered or the controversy is otherwise resolved" would have to be ignored entirely. Any equitable relief to be granted by the trial court would have to be interim in nature only, and thus that relief would seemingly be subsumed in or otherwise resolved at the final hearing on the merits. The trial court's reformation of the non-compete agreements can only be construed as a permanent reformation, which was not within the exception to the arbitration clause in the employment agreements.

Additionally, we agree that reformation pursuant to section 15.51(c) of the Business and Commerce Code is a remedy to be granted at a final hearing, whether on the merits or by summary judgment, not as interim relief. *See EMS USA, Inc. v. Shari*, 309 S.W.3d 653, 657 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 238-39 (Tex. App.—Houston [1st Dist.] 2003, no pet.). *See also, e.g., Lockhart v. McCurley*, No. 10-09-000240-CV, 2010 Tex. App. LEXIS 1909 at *5 (Tex. App.—Waco March 10, 2010, no pet.) (mem. op.); *Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 885 (Tex. App.—Dallas 2003, no pet.); *W.R. Grace & Co.-Conn. v. Henson*, No. 13-06-00668-CV, 2007 Tex. App. LEXIS 6771 at *11-12 (Tex. App.—Corpus Christi 2007, no pet.) (mem. op.).

### Other Provisions in the Agreement

Having determined that the trial court's reformation of the non-compete agreements did not fit within the exceptions to the arbitration agreement, we must

determine whether the reformation is an issue to be determined by the arbitrator or the trial court. Cavanna, Gray, and Nester contend that there are two provisions outside of the arbitration provisions in the employment agreements which establish that the trial court was the proper forum for the issue of the reformation of the non-compete agreements rather than to be determined through arbitration. The first is the reference to "a court of competent jurisdiction" within the tolling provision. The second is contained in the next paragraph, paragraph (h) in the acknowledgment section which states:

> (h) the covenants contained in Paragraphs 8 through 12 are reasonable with respect to their duration, geographic area and scope. If, at the time of enforcement of this Paragraph 11, a court holds that the restrictions stated herein are unreasonable under the circumstances then existing, the parties hereto agree that the maximum period, scope or geographic area legally permissible under such circumstances will be substituted for the period, scope or area stated herein.

Cavanna, Gray, and Nester argue that these provisions establish a clear intent between the parties that even if the exception stated in the arbitration agreement itself does not allow for the reformation of the agreement pursuant to the Business and Commerce Code as "other equitable relief," the reformation dispute should be resolved only by the trial court because of the use of the term "court" rather than "arbitrator" or "arbitral forum" in these additional paragraphs.

The motion to reform asked the trial court to determine that the restrictions contained within the non-compete agreements were not reasonable either in scope or duration or alternatively, for the trial court to determine that they had fully complied with the non-compete agreements. When we consider the factual allegations contained

within the motion to reform, we find that these claims necessarily "touch matters" that are covered by, have a "significant relationship" to, are "inextricably enmeshed" with, or are "factually intertwined" with the contract that contains the arbitration agreement. *See Pennzoil Co. v. Arnold Oil Co.*, 30 S.W.3d 494, 498 (Tex. App.—San Antonio 2000, orig. proceeding). Thus, we find that Cavanna, Gray, and Nester have not established an affirmative or other defense to the arbitration clause sufficient to overcome the presumption in favor of arbitration, and therefore the trial court erred in ruling on the motion to reform. We sustain issue one. Because of our holding sustaining the first issue, we do not reach the second issue relating to the arbitrators determining arbitrability.

### Stay of Proceedings

In its third issue, GWSI complains that the trial court erred by denying its motion to stay the proceedings entirely pending the outcome of the arbitration. The trial court granted the motion to stay relating to Steve Gray, Cavanna, David Gray, Nester, and CGN Leasing but denied the motion as it relates to the other defendants.

Federal law requires courts to stay litigation of claims that are subject to arbitration until arbitration is completed. 9 U.S.C.A. § 3 (West 2009); *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 195-96 (Tex. 2007) (orig. proceeding). Even when a party has brought arbitrable claims against one party and claims not subject to arbitration against another party in the same lawsuit, courts should stay all litigation if the collateral litigation addresses the same issues as arbitration which threatens to render the arbitration moot. *See In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d at 195-96.

None of the non-signatories have filed briefs in this Court. However, our review of the claims indicates that the central issue to all is the purported violation of the non-compete agreements. Therefore, the litigation should be stayed pending the outcome of the arbitration and the trial court erred to order otherwise. We sustain issue three.

## *TEMPORARY INJUNCTION*

GWSI indicated in its notice of appeal that it was appealing the trial court's order granting a temporary injunction against it and in favor of Steve Gray and CGN Leasing. Steve Gray and CGN Leasing contend that any complaint regarding the temporary injunction has been waived because no issue was raised complaining of the trial court's entry of the temporary injunction. GWSI, in its reply brief, acknowledged the failure to raise the issue but argues that the injunction order is void on its face; therefore, the issue is not waived by the failure to complain about the injunction order in the original appellant's brief.

Rule 683 of the Rules of Civil Procedure sets forth part of the requirements for a temporary injunction. *See* TEX. R. CIV. P. 683. Rule 683 requires that "[e]very order granting a temporary injunction shall include an order setting the cause for trial on the merits with respect to the ultimate relief sought." TEX. R. CIV. P. 683. The order of temporary injunction does not include an order setting the cause for trial on the merits as required by Rule 683. *Id.*; *see also EOG Res., Inc. v. Gutierrez*, 75 S.W.3d 50, 52 (Tex. App.—San Antonio 2002, no pet.) (reason for requiring injunction order to include trial date is to prevent temporary injunction from effectively becoming permanent without trial). The requirements of Rule 683 are mandatory and must be strictly followed.

*Qwest Commc'ns. Corp. v. AT & T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000) (per curiam); *InterFirst Bank San Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986) (per curiam).

When a temporary injunction order does not meet the mandatory requirements of Rule 683, it must be declared void and dissolved, regardless of whether the defect was raised or briefed on appeal. *InterFirst*, 715 S.W.2d at 641 (temporary injunction that does not set cause for trial on merits is void and must be dissolved); *Bay Fin. Sav. Bank, FSB v. Brown*, 142 S.W.3d 586, 591 (Tex. App.—Texarkana 2004, no pet.) (although error not raised on appeal, temporary injunction void because it did not include order setting cause for trial on merits); *EOG Res.*, 75 S.W.3d at 53 (same). A void order has no force or effect and confers no right; it is a nullity. *See In re Garza*, 126 S.W.3d 268, 273 (Tex. App.—San Antonio 2003, orig. proceeding).

Because the temporary injunction order does not set the cause for trial on the merits, it is void. We reverse the trial court's temporary injunction order and order that it be dissolved. *InterFirst*, 715 S.W.2d at 641 (Tex. 1986).

*Conclusion*

We find that the trial court erred by reforming the employment agreements and not determining that the issue of reformation should be determined by the arbitrators. We further find that the trial court erred by denying the motion to stay the litigation as to the non-signatories to the employment agreements until the completion of the arbitration. We order that the temporary injunction is void and order the trial court to

dissolve it.  We reverse and remand to the trial court for further proceedings.  The stay

of the trial court proceedings issued by this Court on March 11, 2011 is hereby lifted.


                                        TOM GRAY
                                        Chief Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Reversed and remanded
Opinion delivered and filed October 12, 2011
[CV06]