

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00167-CV

TRANTER, INC.                                                          APPELLANT

V.

JAMES A. LISS AND PAUL                                               APPELLEES
MUELLER COMPANY

------------

FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Tranter, Inc. appeals the trial court's order denying its application

for a temporary injunction against appellees James A. Liss and Paul Mueller

Company (PMC).[2]  We reverse and remand.

---

[1]*See* Tex. R. App. P. 47.4.

[2]This is an accelerated interlocutory appeal.  *See* Tex. Civ. Prac. & Rem.
Code Ann § 51.014(a)(4) (West Supp. 2013).

**Background Facts**

Tranter develops, manufactures, and sells "heat exchangers," which are machines used in various industries to heat or cool fluids. Liss began working at Tranter on September 17, 2001. He held a number of positions, but he eventually became a regional sales manager in 2008. Tranter claims that as a regional sales manager, Liss received confidential information such as sales strategies, financial information, service rates, and technical knowledge.

On his first day of employment with Tranter, Liss signed an "Employee Technology Agreement" in which he agreed not to disclose Tranter's confidential information without Tranter's consent. The agreement also contained the following provisions:

> 6.   A.   I agree, for 3 years following the end of my employment with [Tranter,] not to engage in or contribute my knowledge to any work which is competitive with or similar to a product, process, apparatus[,] or service on which I worked while at [Tranter] at any time during the period of 5 years immediately before my employment ended.
>
> B.   I understand that I will be permitted to engage in the work or activity described in this subparagraph if I provide [Tranter] with clear and convincing written evidence (including assurances from my new employer and me) that the contribution of my knowledge to that work or activity will not cause me to disclose, base judgment upon, or use any Confidential Information. [Tranter] will furnish me a written consent to that effect if I provide the required written evidence. I agree not to engage in such work or activity until I receive the written consent from [Tranter].

In early July 2012, Liss accepted a position with PMC. PMC also sells heat exchange products. Liss resigned from Tranter on July 8, 2012 and began

2

working for PMC. On July 9, 2012, Liss requested Tranter's consent to work for PMC.

On July 19, 2012, PMC terminated Liss's employment because of concerns regarding Liss's agreement with Tranter, and PMC and Tranter entered into discussions regarding Liss's employment. After weeks of discussions, Tranter declined to give its consent because it believed that Liss's position with PMC (as a sales representative trainer) would use Tranter's confidential information. PMC told Tranter that it would not employ Liss without Tranter's consent.

In January 2013, Tranter discovered that PMC had re-hired Liss in October 2012 in the same position and in direct competition with Tranter. Tranter sued Liss for breach of contract and PMC for tortious interference with an existing contract, fraud, and negligent misrepresentation. Tranter also sued Liss and PMC for conspiracy, and it sought a temporary restraining order, temporary and permanent injunctions, and attorney's fees. The trial court granted Tranter a temporary restraining order prohibiting Liss from working at PMC "in a same or similar position of that held while employed at Tranter," from disclosing or using Tranter's confidential or proprietary information, and from soliciting any of Tranter's customers that were not previously also PMC's customers.

The trial court then held a hearing on Tranter's application for a temporary injunction. After the hearing, the trial court found that the Employee Technology Agreement was unenforceable because of a lack of consideration and because it

3

did not contain geographic limitations. The trial court therefore denied Tranter's application, and Tranter filed this appeal.

## Standard of Review

A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)). Whether to grant or deny a temporary injunction is within the trial court's sound discretion. *Id.*

A temporary injunction is an extraordinary remedy and will not issue as a matter of right. *Id.* To obtain a temporary injunction, an applicant must plead and prove (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.* A probable right of recovery is shown by alleging a cause of action and presenting evidence tending to sustain it. *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 220 (Tex. App.—Fort Worth 2009, pet. denied), *cert. denied*, 559 U.S. 1036 (2010). An injury is irreparable if damages would not adequately compensate the injured party or if they cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204; *Frequent Flyer Depot*, 281 S.W.3d at 220.

On appeal, we do not review the merits of the underlying case. *Davis v. Huey*, 571 S.W.2d 859, 861 (Tex. 1978), *rev'd on other grounds*, *Davis v. Huey*, 620 S.W.2d 561 (Tex. 1981). Instead, we determine only whether there has

4

been an abuse of discretion by the trial court in granting or denying the relief. *Id.* at 862. Given the abuse of discretion standard, we review the evidence submitted to the trial court in the light most favorable to the court's ruling, draw all legitimate inferences from the evidence, and defer to the trial court's resolution of conflicting evidence. *See IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 196 (Tex. App.—Fort Worth 2005, no pet.). A reviewing court will not reverse an order on a temporary injunction unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *EMSL Analytical, Inc. v. Younker*, 154 S.W.3d 693, 696 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The trial court does not abuse its discretion when basing its decision concerning a temporary injunction on conflicting evidence, nor does it abuse its discretion when some evidence of substantive and probative character exists to support its decision. *Wright v. Sport Supply Grp., Inc.*, 137 S.W.3d 289, 292 (Tex. App.—Beaumont 2004, no pet.).

## Discussion

### I. Probable right to recovery

To have obtained a temporary injunction, Tranter was required to show that it had a probable right to recovery on its causes of action against Liss and PMC. *Frequent Flyer Depot*, 281 S.W.3d at 220. Tranter may have proven its probable right to recovery by alleging the existence of a right and presenting evidence tending to show that right is being denied. *Dallas Anesthesiology Assocs., P.A. v. Tex. Anesthesia Grp., P.A.*, 190 S.W.3d 891, 897 (Tex. App.—

5

Dallas 2006, no pet.). Tranter sued for breach of contract, tortious interference with an existing contract, fraud, negligent misrepresentation, conspiracy, and a permanent injunction. The parties agree that the conspiracy, fraud, and negligent misrepresentation causes of action are irrelevant to the injunction that Tranter seeks. The causes of action relevant to Tranter's temporary injunction are all based upon the noncompete clause in the Employment Technology Agreement.

Tranter was required to establish a "substantial likelihood of prevailing on the merits of its claims regarding the enforceability" of the covenant not to compete. *Loye v. Travelhost, Inc.*, 156 S.W.3d 615, 620 (Tex. App.—Dallas 2004, no pet.). However, an appeal of an order denying a temporary injunction based on noncompete clauses does not present for appellate review the ultimate question of whether the agreement is enforceable. *See Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 882-83 (Tex. App.—Dallas 2003, no pet.). We therefore look at the enforceability of the noncompete, but only to the extent necessary to determine whether the requirements for a temporary injunction have been met.

The Covenants Not to Compete Act states,

[A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

6

Tex. Bus. & Com. Code Ann. § 15.50(a) (West 2011). Therefore, to determine whether Tranter established a probable right to recovery, we must determine whether the noncompetition clause at issue (1) is ancillary to or part of an otherwise enforceable agreement and (2) contains reasonable limitations as to time, geographic area, and scope of activity that do not impose a greater restraint than is necessary.

## A. Ancillary to or part of an otherwise enforceable agreement

In an employment-at-will context, a noncompetition covenant is part of an otherwise enforceable agreement if the employer gives independent, nonillusory consideration in exchange for the employee's promise not to compete. *See Light v. Centel Cellular Co.*, 883 S.W.2d 642, 645 (Tex. 1994), *overruled on other grounds by Marsh USA Inc. v. Cook,* 354 S.W.3d 764, 772 (Tex. 2011). Confidential or proprietary information may suffice as consideration. *See Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 649 (Tex. 2006).

The Employee Technology Agreement states that the consideration that Liss received was "[his] continuing employment in any capacity with Tranter . . . , and . . . the salary or wages paid for [his] services during [his] employment." Liss and PMC argue that a promise for continued employment is insufficient consideration as a matter of law. *See Light*, 883 S.W.2d at 644 ("Consideration for a promise, by either the employee or the employer in an at-will employment, cannot be dependent on a period of continued employment."). The reasoning of *Light*, upon which Liss and PMC rely, has been repeatedly addressed and

7

modified by later supreme court decisions. *See Marsh USA*, 354 S.W.3d at 774–75 (discussing the supreme court's opinions addressing *Light*). In *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844 (Tex. 2009), the supreme court moved away from *Light*'s restrictiveness and held that "[w]hen the nature of the work the employee is hired to perform requires confidential information to be provided for the work to be performed by the employee, the employer impliedly promises confidential information will be provided," *id.* at 850. Liss and PMC argue first that the express language of the agreement forecloses the possibility of any implied promises. Second, they argue that *Mann Frankfort* is inapplicable to the present case because *Mann Frankfort* carved out an exception only for cases in which an employee's work requires confidential information.

We find nothing in the language of the contract nor in the relevant caselaw that prohibits the coexistence of an express, illusory promise and an implied, nonillusory promise. *See id.* at 858 (Hecht, J., concurring) (noting the purpose of the Act "is to facilitate, not impede, enforcement of covenants not to compete"). *Mann Frankfort* states, "[W]hen it is clear that performance expressly promised by one party is such that it cannot be accomplished until a second party has first performed, the law will deem the second party to have impliedly promised to perform the necessary action." *Id.* at 851. In the agreement at issue here, Liss expressly promised not to disclose Tranter's confidential information. Liss could not perform that promise until Tranter first disclosed its confidential information to

him. Tranter's promise to give Liss the confidential information is therefore deemed to be implied. *See id.* at 858 (Hecht, J., concurring) ("The parties to an employment agreement are presumed to have intended it to be effectual, and the agreement should not be denied enforceability on technical grounds of want of mutuality if that result can be avoided."). This is so regardless of what other promises Tranter may have made.

Liss and PMC argue that *Mann Frankfort* is distinguishable because the employee's position in *Mann Frankfort* required confidential information whereas Liss's job at Tranter did not.[3] *See id.* at 850. The relevant inquiry is not whether Liss's job *could* have been performed without Tranter's confidential information but whether it *was* performed without the confidential information. Liss's testimony was that he "was exposed to information without a doubt." He was also questioned directly, "Did you have and receive Tranter confidential information that you believe is confidential during your employment with Tranter?" Liss answered, "Yes." He testified that he used Tranter's proprietary software and that he was given sales representative training material and sales reports. *See id.* at 851 (stating that access to client database with client financial information was confidential) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 684 (Tex. 1990) (stating that client lists are confidential information that may

---

[3]Liss testified that his job at Tranter did not depend on confidential information from Tranter. But he later acknowledged that some of the things that Tranter claimed as confidential information "were, of course, part of the day to day doing the job."

be protected by a noncompete)). At the point that Tranter provided the impliedly promised confidential information, the parties made an enforceable agreement. *See id.* at 852 ("[T]he parties still formed an 'otherwise enforceable agreement' as contemplated by section 15.50 when Mann Frankfort performed its illusory promise by actually providing confidential information.") (citing *Alex Sheshunoff*, 209 S.W.3d at 651 ("[A] unilateral contract formed when the employer performs a promise that was illusory when made can satisfy the requirements of the Act.")); *see also York v. Hair Club For Men, L.L.C.*, No. 01-09-00024-CV, 2009 WL 1840813, at *4–5 (Tex. App.—Houston [1st Dist.] June 25, 2009, no pet.) (mem. op.) (following *Mann Frankfort* and holding that nondisclosure agreement was enforceable because employer provided confidential client information to employees).

The consideration requirement was satisfied by Tranter's performance in disclosing its confidential information to Liss in exchange for Liss's promise to keep that information confidential. *See Alex Sheshunoff*, 209 S.W.3d at 651 ("[I]f, as in the pending case, the employer's consideration is provided by performance and becomes non-illusory at that point, . . . we see no reason to hold that the covenant fails."). The noncompete clause was therefore ancillary to an otherwise enforceable agreement. *See Light*, 883 S.W.2d at 645.

## B. Reasonable limitations

The second criterion under the Covenants Not to Compete Act requires the noncompete to contain "limitations as to time, geographical area, and scope of

10

activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." Tex. Bus. & Com. Code Ann. § 15.50(a).

The noncompetition covenant in this case states,

> I agree, for 3 years following the end of my employment with [Tranter,] not to engage in or contribute my knowledge to any work which is competitive with or similar to a product, process, apparatus[,] or service on which I worked while at [Tranter] at any time during the period of 5 years immediately before my employment ended.

This clause does not contain a reasonable geographic restriction; it in fact contains no restriction at all.[4] It is therefore unreasonable and unenforceable as written. *See Juliette Fowler Homes, Inc. v. Welch Associates, Inc.*, 793 S.W.2d 660, 663 (Tex. 1990) (holding noncompete was an unreasonable restraint of trade when it contained no geographic restriction at all).[5]

---

[4]Tranter presents a vague argument on appeal that the agreement does in fact contain some sort of geographic restriction, but fails to explain precisely what the restriction is, noting at one point that Liss "was responsible for the entire western half of the United States," and at another point, that PMC competes with Tranter "on a global level." *See Butts Retail, Inc. v. Diversifoods, Inc.*, 840 S.W.2d 770, 774 (Tex. App.—Beaumont 1992, writ denied) (holding that noncompete restricting trade within the "metropolitan area" around a shopping mall was unenforceable when "metropolitan area" was undefined). To the extent that Tranter argues that the lack of geographic restriction equates to a global or other territory restriction, we overrule that argument. *See Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 661 (Tex. App.—Dallas 1992, no writ) ("Noncompete covenants with broad geographical scopes have been held unenforceable, particularly when no evidence establishes that the employee actually worked in all areas covered by the covenant.").

[5]Although courts have upheld noncompetes without geographic restrictions, they have done so when other limiting clauses, such as restricting

11

When a court holds that a noncompete is unreasonable for lack of a geographic restriction, it is required to reform it. *See* Tex. Bus. & Com. Code Ann. § 15.51(c). However, because the noncompete is unenforceable as written, the Covenant Not to Compete precludes Tranter from recovering damages on its contract claims. *See id.* (stating that the court must reform an unreasonable covenant and enforce it as reformed "except that the court may not award the promisee damages for a breach of the covenant before its reformation and the relief granted to the promisee shall be limited to injunctive relief"); *see also Travel Masters, Inc. v. Star Tours, Inc.*, 827 S.W.2d 830, 833 (Tex. 1991) (holding that employer could not recover damages on its tortious interference of the covenant not to compete claim when the covenant was an unreasonable restraint of trade), *superseded by statute on other grounds as stated in Alex Sheshunoff*, 209 S.W.3d at 653 n.5; *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 388 (Tex. 1991) ("Since MH obtained no reformation of the covenant before Haass' actions for which it sought damages, the act would *prohibit* MH from obtaining

---

contact with former clients, served the same purpose of creating reasonable limits to the noncompetes' reach. *See, e.g.*, *Lockhart v. McCurley*, No. 10-09-00240-CV, 2010 WL 966029, at *2 (Tex. App.—Waco Mar. 10, 2010, no pet.) (mem. op.) (holding that limitation to specific clients was "sufficient alternative for a geographic limitation"); *Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 654 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("A number of courts have held that a non-compete covenant that is limited to the employee's clients is a reasonable alternative to a geographical limit."). Those types of limiting clauses are absent from the covenant at issue.

damages.").  Tranter has therefore not shown a probable right to recovery on its breach of contract and tortious interference claims.

### C. Permanent injunctive relief

Because the noncompetition clause may be reformed, the lack of geographic restriction is not necessarily fatal to Tranter's ability to demonstrate a probable right to permanent injunctive relief.[6]  *See Butnaru*, 84 S.W.3d at 204. Similarly, if the limitations as to time and scope of activity were likewise unreasonable, the trial court could reform the limitations and enforce the reformed covenant through injunctive relief.  *See* Tex. Bus. & Com. Code Ann. § 15.51(c) ("[T]he court shall reform the covenant to the extent necessary . . . and enforce the covenant as reformed.").

Under the common law, a party seeking an injunction must show that without injunctive relief he will suffer irreparable injury for which he has no adequate legal remedy.  *Tom James Co. v. Mendrop*, 819 S.W.2d 251, 252 (Tex.

---

[6]Liss argues that we are not required to reform the noncompete because section 15.51 of the Covenants Not to Compete Act applies only to inadequate restrictions, and here there is no restriction at all.  Although Liss's argument has some basis in the statutory language, *see* Tex. Bus. & Com. Code Ann. § 15.51(c) (requiring courts to reform a covenant only if it "contains limitations as to time, geographical area, or scope of activity to be restrained that are not reasonable"), Texas courts, including this one, have reformed those covenants that have no geographic restriction as well.  *See Cobb v. Caye Publ'g Grp., Inc.*, 322 S.W.3d 780, 785–86 (Tex. App.—Fort Worth 2010, no pet.) (noting that noncompete contained no geographic restriction and reforming it in temporary injunction); *Poole v. U.S. Money Reserve, Inc.*, No. 09-08-00137-CV, 2008 WL 4735602, at *9 (Tex. App.—Beaumont Oct. 30, 2008, no pet.) (mem. op.).  *Cf. Zep Mfg.*, 824 S.W.2d at 661 (refusing to reform covenant lacking geographical restriction when employer did not seek injunctive relief).

App.—Fort Worth 1991, no writ). However, if a party relies on a statute that defines the requirements for injunctive relief, then the express statutory language supersedes common law requirements. *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 795 (Tex. App.—Houston [1st Dist.] 2001, no pet.). Our sister courts have held that the Covenants Not to Compete Act preempt the common law requirements for permanent injunctive relief. *See Primary Health Physicians, P.A. v. Sarver*, 390 S.W.3d 662, 665 (Tex. App.—Dallas 2012, no pet.); *EMSL Analytical*, 154 S.W.3d at 695; *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 239 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *Butler*, 51 S.W.3d at 795. We agree. The Act has no requirement for a showing of irreparable injury; thus, irreparable injury for which there is no adequate legal remedy is not a prerequisite to permanent injunctive relief. Tex. Bus. & Com. Code Ann. § 15.51(a) (providing for "damages, injunctive relief, or both" for a breach of a noncompete by the promisor); *see also id.* § 15.52 (stating that "the procedures and remedies . . . provided by Section 15.51 . . . are exclusive and preempt any other criteria for enforceability of a covenant not to compete or procedures and remedies in an action to enforce a covenant not to compete under common law or otherwise").

PMC and Liss argue that Tranter failed to show that it had a probable right to recovery because it breached the contract by failing to grant Liss permission to work for PMC despite Liss's and PMC's assurances that Liss would not use Tranter's confidential information. PMC and Liss essentially sought a

14

determination from the trial court on who breached the contract first, or in other words, whether Liss was justified in breaching the contract. At the hearing for a temporary injunction, the applicant is not required to establish that it will prevail on final trial. *Walling*, 863 S.W.2d at 58. The purpose of a temporary injunction is to preserve the status quo, not to determine the respective rights of the parties under the cause of action asserted or defenses or counterclaims urged. *McCan v. Missouri Pac. R.R. Co.*, 526 S.W.2d 754, 758 (Tex. Civ. App.—Corpus Christi 1975, no writ).

Therefore, because Tranter provided evidence that the noncompete at issue is ancillary to or part of an otherwise enforceable agreement and because the noncompete can be reformed to contain reasonable limitations as to time, geographic area, and scope of activity that do not impose a greater restraint than is necessary, Tranter established a probable right to recovery on its permanent injunction claim.[7] *See* Tex. Bus. & Com. Code Ann. § 15.50(a); *Shoreline Gas, Inc. v. McGaughey*, No. 13-07-00364-CV, 2008 WL 1747624, at *9 (Tex. App.—Corpus Christi April 17, 2008, no pet.) (mem. op.) (holding that employer established its probable right to relief regarding the noncompete by showing that the noncompete was ancillary to an otherwise enforceable agreement).

## II. A probable, imminent, and irreparable injury

---

[7]PMC argues that reformation is only proper as part of a final judgment. As explained further in section IV of this opinion, we disagree that reformation is inappropriate as part of a grant of temporary injunctive relief.

As stated above, common law requires a showing of a probable, imminent, and irreparable injury as a prerequisite for injunctive relief. *Mendrop*, 819 S.W.2d at 252. The Covenants Not to Compete Act preempts that requirement for permanent injunctive relief, but it does not preempt the requirements for temporary injunctive relief. *See Cardinal Health*, 106 S.W.3d at 239 ("Because section 15.51(a) does not govern preliminary relief, it does not preempt the law that generally applies to preliminary relief, including the equitable rules that apply to temporary injunctions."). Tranter was therefore required to show an irreparable injury to be entitled to a temporary injunction.

A highly trained employee's continued breach of a noncompete agreement creates a rebuttable presumption that the employer is suffering an irreparable injury. *See Wright*, 137 S.W.3d at 294; *Cardinal Health*, 106 S.W.3d at 236; *Unitel Corp. v. Decker*, 731 S.W.2d 636, 641 (Tex. App.—Houston [14th Dist.] 1987, no writ); *Martin v. Linen Sys. for Hosps., Inc.*, 671 S.W.2d 706, 709 (Tex. App.—Houston [1st Dist.] 1984, no writ); *Hartwell's Office World, Inc. v. Systex Corp.,* 598 S.W.2d 636, 639 (Tex. Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). The evidence at the hearing was that PMC makes and markets products in direct competition with Tranter. Liss acknowledged that he is working in the same position at PMC that he had at Tranter, with the same general duties, in the same territory, and in direct competition with Tranter.

Scott Poenitzsch, Vice President and General Manager of Tranter, testified that at Tranter Liss learned

16

intimate manufacturing knowledge of the processes, the costs, what products are manufactured in what locations. He would also know what our minimum thresholds are for profitability, gross margin[] target as well as actual. He would also know our gross margin targets actual to the product line as well as how the manufacturer's reps were doing and as well as what the markets were doing.

He testified that Liss was also told the technical advantages of Tranter products over their competitors and "intimate applications of where these heat exchangers are being installed." Poenitzsch said that Liss had access to costing and pricing of Tranter products as well as gross margin minimums that he would use to know "exactly where our pricing needs to be in order to win that order." Poenitzsch testified that Liss had knowledge of Tranter's business goals and evaluations of Tranter's sales representatives.

Poenitzsch explained that Tranter refused to give consent for Liss to work for PMC because

[f]rom all the evidence that was provided to us by their counsel as well as representatives of [PMC], it was very clear to us that he was gonna be doing the same job, the same title, in the same region, and promoting and selling identical product to Tranter, and that caused us concern.

He said, "[W]e believe that he could cause us irreparable harm going forward by moving some of our customers over to Paul Mueller, reduce our revenue, reduce our profitability, and harm our stakeholders," and, "We believe he has enough intimate confidential information to know what Tranter would be bidding on a particular project that [PMC] would be bidding on and possibly bid underneath us and win the order based on that."

17

When asked whether he had believed Liss when Liss had promised that he would not use Tranter's confidential information, Poenitzsch said, "I had a difficulty with that statement simply because even though he may not say it, he could make inferences or possibly say things inadvertently that would position [PMC] in a better light than Tranter at a particular customer or particular sales rep." He testified, "[Tranter] couldn't understand how he could be successful at his job, in the same job, the same region, same products, same markets, without having to use confidential information, either inadvertently or directly."

Poenitzsch explained that the sales cycle "can be upwards of twelve to twenty-four months. So if Mr. Liss has engaged with one of our customers or one of our reps say last month, I may not feel that impact for another year to eighteen months." He estimated that "threat is probably . . . somewhere around the one to two-year frame because of the sales cycle." Poenitzsch testified that he did not know of any reps being poached by Liss to move to PMC. He also said that "if that conversation is going on, I probably wouldn't know it was going on until they actually terminate the relationship with us."

At the time of trial, Liss had gone on four sales calls with PMC. He testified that he could not use Tranter's pricing information and discount schedules at PMC, that he does not use the training material at PMC, and that he does not use his knowledge of Tranter's customers or sales reps at PMC. Terry Snell, general manager for the heat transfer group at PMC testified that Liss had

18

not disclosed Tranter's confidential information and that Snell did not think that he could use any information that Liss disclosed.

In their briefs on appeal, PMC and Liss argue that Tranter did not establish any injury because the evidence was that Tranter did not know "if, how, or to what extent Liss was harming Tranter through his wrongful use of [its] confidential information" and that it would be "some substantial period of time before Liss [would be] in a position to negatively affect Tranter's business." Rather than rebutting the presumption, this evidence demonstrates precisely why the presumption exists. *See Williams v. Compressor Eng'g Corp.*, 704 S.W.2d 469, 472 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) ("Even when he operates in the best of good faith, the former employee working in a similar capacity can hardly prevent his knowledge of his former employer's confidential methods from showing up in his work."); *see also Daily Instruments Corp. v. Heidt*, No. H-13-2189, 2014 WL 710683, at *14 (S.D. Tex. Feb. 21, 2014) ("An employee who possesses trade secrets belonging to a former employer and accepts employment with one of its competitors, even if acting in good faith, will have difficulty preventing his knowledge from infiltrating his work.").

Liss and PMC did not rebut Tranter's evidence that Liss is directly competing with Tranter in the same territory and for the same customers that Liss worked with at Tranter. *Cf. Travelhost, Inc. v. Figg*, No. 3:11-CV-0455-D, 2011 WL 6009096, at *4 (N.D. Tex. Nov. 22, 2011) (mem. op.) (holding that if the presumption of irreparable harm applied, the employee rebutted it by evidence

19

that she no longer works in the restricted geographic area); *Cardinal Health*, 106 S.W.3d at 235–36 (holding that employee rebutted employer's presumption when the evidence was that employer's sales increased, that there was only a small percentage of shared clients, and that employee did not solicit those clients). While there was evidence that Liss was not actively trying to use Tranter's confidential information, there was no evidence rebutting the presumption that Liss would have extreme difficulty in not indirectly applying some of that confidential knowledge in his position at PMC. *See Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 552 (Tex. App.—Dallas 1993, no writ) ("Rugen is in possession of IBS's confidential information and is in a position to use it. Under these circumstances, it is probable that Rugen will use the information for her benefit and to the detriment of IBS. At times, an injunction is the only effective relief an employer has when a former employee possesses confidential information."); *Hartwell's Office World*, 598 S.W.2d at 639 (holding that evidence of earnings from products in direct competition with former employer was not evidence that former employer did not suffer an irreparable injury). Tranter therefore established a probable, imminent, and irreparable injury. *See Daily Instruments*, 2014 WL 710683, at *14 ("In Texas, injury resulting from the breach of non-compete covenants is the epitome of irreparable injury.") (quoting *A & A Global Indus., Inc. v. Wolfe*, No. 3:01-CV-1515–D, 2001 WL 1388020, at *5 (N.D. Tex. Nov. 6, 2001)).

20

### III. Whether the trial court abused its discretion

While the general rule is that a trial court has broad discretion in determining whether to issue an injunction, its discretion "does not extend to the erroneous application of the law to the undisputed facts." *Alert Synteks, Inc. v. Jerry Spencer, L.P.*, 151 S.W.3d 246, 253 (Tex. App.—Tyler 2004, no pet.) (citing *Bank of the Southwest N.A. v. Harlingen Nat'l Bank*, 662 S.W.2d 113, 115–16 (Tex. App.—Corpus Christi 1983, no writ)). The trial court's order denying Tranter's petition for a temporary injunction includes the statement that

the Court finds that:

> 1. Tranter, Inc.'s Employee Technology Agreement is unenforceable due to a lack of consideration; and
>
> 2. Tranter, Inc.'s Employee Technology Agreement does not contain any limitations to geographic area as required by Texas Business & Commerce Code § 15.50(a).

These "findings" do not meet the requirements of rule 299a of the rules of civil procedure and do not control the outcome of this case. *See* Tex. R. Civ. P. 299a ("Findings of fact shall not be recited in a judgment. . . . Findings of fact shall be filed . . . separate and apart from the judgment."); *Tom James of Dallas,* 109 S.W.3d at 884; *see also Samuelson v. United Healthcare of Tex., Inc.*, 79 S.W.3d 706, 710 (Tex. App.—Fort Worth 2002, no pet.) ("Where an abuse of discretion standard of review applies to a trial court's ruling, findings of fact and conclusions of law, while helpful, are not required.") (citing *Crouch v. Tenneco, Inc.*, 853 S.W.2d 643, 649 & n.3 (Tex. App.—Waco 1993, writ denied) (op. on reh'g)).

21

However, such "findings" can be helpful in determining whether the trial court properly exercised its discretion. *Tom James of Dallas*, 109 S.W.3d at 884 (citing *IKB Indus., Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997)); *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 852 (Tex. 1992) (orig. proceeding)). A trial court abuses its discretion when it misapplies the law to established facts or when the evidence does not reasonably support its determination regarding the existence of a probable right of recovery or a probable injury. *See Tom James of Dallas*, 109 S.W.3d at 883.

Tranter established a probable right to recovery and a probable, irreparable injury. The evidence, viewed in a light most favorable to the judgment, does not support the trial court's denial of Tranter's application for a temporary injunction. Further, the trial court's statements that the noncompete agreement was unenforceable indicate a misapplication of the law to the established facts in this case. The trial court therefore abused its discretion by denying the temporary injunction. We sustain Tranter's issues.

## IV. Remand is appropriate

As previously noted, PMC argues that reformation is only proper as part of a final judgment. PMC cites *Gray Wireline Serv., Inc. v. Cavanna*, 374 S.W.3d 464, 470–71 (Tex. App.—Waco 2011, no pet.), and *Cardinal Health,* 106 S.W.3d at 238–39, in support of its argument. These cases analyzed section 15.52 of the Covenants Not to Compete Act and determined, based on the language of the Act, that the statutory remedies preempt only final remedies. *See Cardinal*

22

*Health*, 106 S.W.3d at 238–39. The *Cardinal Health* court based its decision in part on the Act's inclusion of reformation as a remedy and noted that reformation is "generally a final remedy." *Id.*

But reformation is not only a final remedy. *See Justin Belt Co., Inc. v. Yost*, 502 S.W.2d 681, 685 (Tex. 1973) (affirming trial court's reformation of noncompete in its order granting temporary injunction); *Weatherford Oil Tool Co. v. Campbell,* 161 Tex. 310, 340 S.W.2d 950, 952–953 (1960) (explaining that a court may be able to reform a noncompete covenant "as an incident to the granting of injunctive relief"); *Cobb*, 322 S.W.3d at 785–86 (modifying reformation and affirming temporary injunction based on reformed noncompete agreement); *Posey v. Monier Res., Inc.*, 768 S.W.2d 915, 918–19 (Tex. App.—San Antonio 1989, writ denied) (holding that noncompete was unreasonable as to scope and time and modifying the temporary injunction based on the noncompete to be reasonable); *Bertotti v. C.E. Shepherd Co., Inc.*, 752 S.W.2d 648, 654 (Tex. App.—Houston [14th Dist.] 1988, no writ) (upholding temporary injunction which reformed noncompete clause to include geographic restriction); *Martin*, 671 S.W.2d at 709–10 (affirming trial court's reformation of geographic limitation in its order granting temporary injunction). Therefore, we remand this case to the trial court to determine reasonable limitations. *See Poole*, 2008 WL 4735602, at *9 (holding that temporary injunction was overly broad and remanding to the trial court to determine reasonable reformations); *Wright*, 137 S.W.3d at 299 (same); *Voorhees v. Johnson*, 538 S.W.2d 271, 273 (Tex. Civ. App.—Beaumont 1976, no

23

writ) (holding that noncompete's geographic restriction was unreasonable, "recogniz[ing] that [court] could reform this contract," and remanding for determination of reasonable restriction); *see also TransPerfect Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 756 (S.D. Tex. 2009) (stating that the law is unsettled regarding reformation at the temporary injunction stage but entering a limited injunction on the reformed contract, "noting that any reformation or permanent injunction to be entered may differ from this temporary reformation based on arguments presented in the parties' dispositive motions or at trial").

## Conclusion

Having sustained Tranter's issues, we reverse the trial court's order denying Tranter's application for a temporary injunction. We remand this case to the trial court for further proceedings consistent with this opinion.

/s/ Lee Gabriel
LEE GABRIEL
JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and GABRIEL, JJ.

DELIVERED: March 27, 2014